These causes were heard together, on exceptions to thé report of the commissioner, and the equity reserved. In order to understand the points submitted, it may be proper to state some of the prominent facts of the case. In June, 1813, James White, the father of the complainant, intermarried with Martha Leger. In contemplation of the marriage, a settlement was duly executed on 7th June, 1813, by which the estate of the future wife, consisting of her interest in certain lands and thirteen' slaves, (by name) was settled to her sole use for life, with power to dispose of the same by will, and in default of such will, to the children of the marriage. This settlement was never recorded; nor was it proved until Dec. 4th, 1813. Martha White died before her husband, without having made any testamentary disposition of the property, and leaving two children of the marriage, to wit, the complainant, and a brother, Henry White, who died in 1832 or 1833, unmarried and intestate. In 1821, James White, the elder., intermarried with Eliza Palmer, the daughter of the defendant, Jesse Palmer. Both husband and wife died within a short time of each other, and prior to 8th March, 1824. James White dying intestate, letters of administration were granted to the defendant, about the period last mentioned. The defendant, and Sarah Ann, now the wife of Valentine Richardson, are the only children of the second marriage. The object of the bill is, to require an account *116 from the defendant, Jesse Palmer, of the negroes included in the marriage settlement, which it is alleged came into his possession: as also an account of the estate of the complainant’s father: and that the said defendant may he compelled to comply with the terms of sale of certain real estate, made under the order of this court, procured at the instance of the defendant, and at which sale he became the purchaser.
■ It may be proper to consider these claims in their order. The answer of the administrator, Jesse Palmer, insists that if the marriage settlement was executed, (which he does not admit,) it is inoperative, because it was never recorded. He states that his intestate was largely indebted, and that his personal estate, including eleven negroes and other property, was sold by permission of the Ordinary, and the proceeds applied to the payment of his debts, and that a balance is due to him on his accounts, as administrator. On comparing the sales with the testimony of the witness, (J. M. Lerrebour,) it appears that a large part, if not all, of the negroes sold as of the estate of White, were included in the marriage settlement. It is inaccurate to assume that this settlement is inoperative, because it is not recorded. It is certainly obligatory on the parties. Neither they, nor the personal representatives of either of them, can take advantage of the omission. “An administrator is the mere representative of his intestate. Wherever the intestate would be bound, the administrator is bound.” King vs. Clarke, 2 Kill C. R., 613.) But the administrator may have been, and probably was, himself, a creditor of the intestate. Although the settlement was perfectly valid between the parties, yet the personal estate of the wife, intended to be secured, became liable to the payment of the husband’s debts. How far an administrator would be warranted in anticipating the judgment of a court, and treating that as assets of the intestate, because it may be subjected to the payment of his debts, is very questionable both in principle and expediency. It may certainly be assumed, however, that he would not be justified until the entire estate of the intestate had been exhausted; and strict proof of this would be required, to authorize the Court in sanctioning such proceeding. In any event, no more of *117 the settled estate should be appropriated than was necessary to satisfy the balance due after the estate of the intestate had been exhausted. In order to apply these principles, it becomes necessary to solve the next question submitted by the pleadings.
Immediately after the marriage of James White, with the defendant’s daughter, he placed in White’s possession two negroes — Nancy, about eleven years old, and Fanny, about five or six years old. They remained in White’s possession till his death. On the part of the complainant it was said, these negroes were given to White, and were assets in the hands of the administrator at his death. The defendant insisted that it was only a loan to his daughter; that he intended at his convenience to make a deed of them to some friend, for the use of his daughter, and that on 30th April, 1822, he executed such deed to L. Palmer, by which the life-interest or use, was secured to his daughter, and on her death to her children. It was also declared that the slaves should not be liable for White’s debts. The original deed could not be found, and the subscribing witness was dead. A copy from the Register’s office was given in evidence, by which it appeared to have been recorded on 18th June, 1822. The witness (Lerrebour,) testified that White was married to the defendant’s daughter in 1821 — that he (the witness) was told by Palmer that he had given these two girls to his daughter, immediately after the marriage. The girls were then in his possession, two or three days after the marriage. Palmer said those were the girls he had given to his daughter after marriage. Witness was frequently at the house : never heard any thing of a loan; understood it to be a gift without any condition. White was not at that time in debt, as far as witness knew.
The Court has been much embarrassed as to the character which should be given to this transaction. I suppose a parol transfer of personal property might be made with such restrictions and limitations; and yet, as was said by Judge Nott in Brashears vs. Blessingham, if such a loan can be made by a father to his children, on marriage, it is a species of loan not much to be encouraged. I think it should be clearly shewn, that it was the understanding *118 of all parties, and especially of the husband, that it Was merely a loan, and not a gift. The presumption should be against such restriction or condition. Regarding the testimony of Lerrebour alone, the gift is abundantly established. The negroes were the absolute property of the husband, long anterior to the date of the deed. He further says, it was a loan, “ and that he intended at his convenience to make a deed of these negroes to some friend, in trust,” &c. It is not stated that this intention was communicated to the husband and acceded to by him, or that he so understood it when he received the negroes. No evidence was given to show that the husband had any knowledge of the deed of April, 1822, unless this may be presumed from the fact of recording; although he was not interested to inquire, and the fact being known could not have influenced his conduct. But it is hardly necessary to repeat what was said by the Court in McDonald vs. Crockett, (2 McCord’s C. R., 130,) that the original transaction cannot receive its character from this subsequent deed. This too, is substantially the claim of creditors; for if the settled estate has been taken to pay the husband’s debts, it would seem very clear, that those interested under the settlement, which was obligatory on the husband, would be subrogated to the rights of creditors whose demands they had satisfied. But from the state of facts presented, I am of opinion, that for all purposes, these negroes and their increase were assets of James White, deceased, in the hands of his administrator.
In respect to the sale of the real estate by the commissioner, in June, 1824, the Court is of opinion that the defendant, Jesse Palmer, is bound to comply with the terms of sale. He complains of no defect in the complainant’s title. He bid off the lands, and has ever since held possession. If he has received no deed, the complainant is now of age and can execute the necessary conveyance. The price of the tract, owned exclusively by the complainant and his brother, is fixed by the account sales. The court is not dissatisfied with the apportionment made of the other tracts in the report of the commissioner. But the interest must be calculated according to the terms of sale and the settled rules of law, as applicable thereto. The *119 complainant’s first exception is sustained, and the second and third over-ruled. The first, second, and third exceptions of the defendant are over-ruled. On all other points submitted by the exceptions, the judgment of the Court is reserved until a further report from the commissioner.
It is ordered and decreed, That it be referred to the commissioner to ascertain and report, how many and which of the negroes, included in the settlement of 1813, came to the possession of the defendant, Jesse Palmer, and how many remained in his possession until the transfer to his co-defendants, Valentine Richardson and Sam’l. Kirton ; and also, what would be a reasonable hire for such slaves while in his possession — that he also ascertain what is the increase of the negroes Nancy and Fancy, and what would be a reasonable hire for the said negroes and increase, since the death of the intestate, James White.
It is further ordered, That the commissioner take an account of the amount due to the complainant, on the purchase of the real estate, stating the same on the principles of this decree. The injunction heretofore granted to continue in force until the further hearing of this cause.

Commissioner’s Report.

The commissioner to whom it was referred to report upon the matters of account in this case, begs leaves respectfully to report:
That on the 17th day of May, 1824, a bill was filed in this honorable Court, by Henry White and James White, minors, by their next friend, Susan Willingham; and Sarah Ann White, and Elizabeth S. White, also minors, by their next friend, Laomi Palmer, against Jesse Palmer, administrator of James H. White, praying the sale of certain lands therein mentioned; one tract of which belonged exclusively to the minors, Henry and James White; as also two undivided thirds of another tract, as is alleged in said bill and admitted in the answer.
That under an order of the Court, the then Commissioner did expose to sale, on 22d June, 1824, the said lands; which were bought by Jesse Palmer. The lands owned *120 exclusively by Henry and James White, were purchased for the gross sum of $1000 ; and all the rest, consisting of three tracts, (including the one, to two-thirds of which said James and Henry White were possessed, in their own right,) was purchased for the sum of $1030. The whole expenses of said sale, as per commissioner’s sales book, •was $62 31.
I regard as beyond a question, that the present defendant, Jesse Palmer, should account to complainant for the nett amount of sales of the land owned exclusively by himself and late brother, Henry White, with interest from day of sale. All the other lands being sold together, the commissioner is unable to ascertain the exact amount for which the two-thirds of said one tract, owned by Henry and James White, was sold, and would report as an equitable adjustment, that as there were three tracts sold for $1030, this one be taken at one-third of that sum, say $343 33 cts., to two thirds of which, $328 88 cts., present complainant appears to be entitled, with interest from day of sale, deducting a proportionate part of expenses of sale. The present bill alleges a marriage settlement, made between the father and mother of complainant, on 7th June, 1813, by which certain property, real and personal, was to be at the sole and separate use of complainant’s mother, and subject to any deed or will executed by her, and in default of any siich instrument, then to descend to the heirs of her body. No such paper was ever executed, so far as I can ascertain; and the said marriage settlement having never been recorded, as required by law, I deem it null and void as to creditors. And it appears that the administrator, the present defendant, had a sale of the entire personal estate of his intestate, (except two negroes, hereafter noticed,) the nett amount of which was the sum of $3,851 17
Also, 75 barrels rice, for 1,06931
4,920 48
And also here, being in the sale of lands sold together, as above, and deduct $35 from gross sale for expenses, and also $224 as be *121 longing to complainant, leaves to credit of administrator’s intestate, 774 00
Making in all to credit of estate, 5,694 48
Administrator paid, as per account, 18th February, 1822, for estate, 4,910 19
783 99
To this add, overpaid, as stated by administrator, in account for 1826, 40 00
823 99
Interest on balance to 1st January, 1826, 29 90
853 89
Then paid, as per account current, 612 95
240 94
Interest on balance to 1st January, 1827, 16 86
257 70
Then paid, as per account current, 221 56
36 14
Interest to 1st January, 1828, ’ 2 52
38 66
Then paid, as per account current, $227 66 Leaving a balance, due administrator, 189 00
Interest on do. to 1st January, 1840, 12 years, 158 76
347 76
Paid, as per account current, 1829, $109 62
Credit estate this year, by sale, 3 cows, 16 50
CO 00 i — ■ to
164 73 Interest to 1st January, 1840, -a 1 os ^
64 73 Paid, as per account current, 1830,
*122 45 30 Interest to 1st January, 1840,
110 03
Paid, as per account current, 1831. o CM
Interest to 1st January, 1840, oi 1 — ! CO co
85 72
708 24
If the commissioner he correct in his views and calculations, the estate of James H. White is indebted to defendant, as above, $708 24 cts. and defendant is indebted to complainant for property to which he was joint, but now sole heir, as follows :
Nett sales of land, exclusively owned by Henry and James White, 980 00
.Complainant’s proportion of balance of land sold, 224 00
1,204 00
Interest from 22d June, 1824, to 1st January, 1840, 1,266 54
In all, $2,470 54
It appears to the commissioner as nothing more than right, that against this last sum the defendant have leave to bring in any necessary expenses he may have incurred and paid for complainant after the estate of James H. White became exhausted, unless the Court determine that the two negroes above-mentioned, (now said to have increased to seven,) belong to estate of said James H. White, and on which matter the commissioner does not feel himself authorized, under the order of the Court, to express an opinion.
Very respecfully reported, by
J. W. COACHMAN,

Comm'r. in Equity.

Exceptions to Commissioner's Report, by Complainant.
1st. exception. For that the commissioner has not allowed interest on the arrears of interest on the amount due *123 for the land, as according to the terms of the purchase of the defendant, Jesse Palmer, he ought to have done, up to the present time,
2d. exception. For that the commissioner allowed two small a portion of the sum paid for the three tracts, in one of which complainant was interested, inasmuch as it was in great measure through the default of defendant Palmer, that the exact interest was not ascertained at the time.
3d. exception. For that the commissioner allowed the administrator, Palmer, an item of $100, counsel fee paid to obtain the sale of the land, which he himself purchased, though administrator of the estate.
4th. exception. For that the commissioner allowed the administrator, Palmer, in his accounts to exceed the interest and consume the capital.
5th. exception. For that there was no competent testimony that the administrator was ever legally authorized to sell the negroes which he himself bought.
6th. exception. For that the commissioner erred in his Report as to the effect of the marriage settlement set up in complainant’s bill; for it is submitted, that though void for want of recording, as to the creditors, it was binding on the parties; and an equity attached (on the negroes contained in it,) in the hands of the administrator, if there were not sufficient assets without them, to pay the debts; and that such equity was not lost by the administrator going through the form of purchasing them in, at his own sale, though such sale had been authorized by the Ordinary.
Wherefore, the said James White excepts to the said commissioner’s report, and appeals therefrom to this honor-ble Court.
Exceptions to the Report of the Commissioner, on behalf of the defendants.
1. The defendants except to the charge of interest on the purchase of land said to have been paid, bought at the commissioner’s sale, as no titles were executed, and no good and. sufficient titles are now tendered ; and in fact no sales were ever reported or confirmed, so that the sales are *124 still inchoate, and neither the purchase money or interest can he received under the proceedings in this case.
2. Because the sale, if complete, divested the minor, and the claim is on the commissioner, or at least should be adjusted upon proper pleadings.
3. Because the interest of complainant in two-thirds of a tract of land sold, is not ascertained by any given data or sufficient proof, and should be ascertained by proper inquiries before the commissioner, or upon proof.
4. Because the commissioner should have taken a separate account of the personal estate and the administration thereof, and leave the real estate to be settled separately, especially as the real estate of James White was liable to the intestate’s debts, and especially to pay the mortgage for the purchase money which is still due and unpaid.
From the above decree of the Chancellor, the defendants appealed, on the grounds:
1. Because they insist on their several exceptions to the report.
2. Because the marriage settlement was not proved, and if proved, their administrator had not notice of it, and if he had, was authorized to apply the fund in payment of debts.
3. Because the settlement of the two negroes by Palmer ■on his daughter, must be taken as well known to the family, and is not disputed by them.